ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/24/2025 2:06 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00114-CV

# In the Fifteenth Court of Appeals
# Austin, Texas

FILED IN
15TH COURT OF APPEALS
AUSTIN, TEXAS
7/24/2025 2:06:27 PM
CHRISTOPHER A. PRINE
Clerk

CECILE ERWIN YOUNG, in her Official Capacity as the Executive Commissioner of the Texas Health and Human Services Commission; MOLINA HEALTHCARE OF TEXAS, INC.; AETNA BETTER HEALTH OF TEXAS, INC.,

*Appellants*,

*v.*

COOK CHILDREN'S HEALTH PLAN, TEXAS CHILDREN'S HEALTH PLAN, SUPERIOR HEALTH PLAN, INC., and WELLPOINT INSURANCE COMPANY,

*Appellees*.

On Appeal from the 353rd Judicial District of Travis County,
No. D-1-GN-24-003839

## MOLINA HEALTHCARE OF TEXAS, INC.'S RESPONSE TO APPELLEES' MOTION TO DISMISS FOR LACK OF JURISDICTION

**SCOTT DOUGLASS & McCONNICO LLP**

JASON R. LaFOND
State Bar No. 24103136
CHERYL JOSEPH LaFOND
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
jlafond@scottdoug.com

*Counsel for Appellant Molina Healthcare of Texas, Inc.*

## TABLE OF CONTENTS

**PAGE**

Table of Authorities ................................................................................. iii

Introduction ........................................................................................... 1

Background ............................................................................................. 2

Argument ............................................................................................... 4

I.  Merits Briefing Should Begin Immediately. ................................... 4

   A.  The Losing Plans' goal is delay. ........................................... 5

   B.  Further delay serves no legitimate purpose. ........................ 7

II.  The Court Should Deny the Motion to Dismiss. ............................ 8

   A.  Molina's standing is not a jurisdictional issue. .................... 9

   B.  Whatever § 51.014(b)'s reach, Molina is a proper party to this appeal. ............................................................................ 12

      1.  The temporary injunction alone is enough to give Molina standing. ......................................................... 12

         a.  The temporary injunction adversely affects Molina. ..................... 12

         b.  The temporary injunction binds Molina. ...................................... 14

         c.  The temporary injunction triggers virtual representation. ............... 17

      2.  Molina is a party of record in the district court. ........... 22

         a.  This Court cannot adjudicate Molina's intervention. ................... 23

         b.  The regional courts of appeals decisions cited by the Losing Plans are inapposite. .......................... 25

   C.  Molina's intervention did not violate the automatic stay. ......................... 27

      1.  Filing a document is not an "other proceeding in the trial court." ...... 27

         a.  "Other proceedings in the trial court" means judicial action in an adversarial posture, not self-executing filings by litigants. .............. 28

         b.  The Losing Plans cannot overcome § 51.014(b)'s fair meaning. .............. 34

      2.  Section 51.014(b)'s stay does not bar proceedings occurring the same day a notice of appeal is filed. ................ 38

Conclusion and Prayer ..................................................................... 40

**APPENDIX**

**Tab**

1        October 15, 2024 Email from HHSC to Molina Healthcare of Texas, Inc.

2        District court docket sheet in No. D-1-GN-24-003839

# Table of Authorities

**Page(s)**

## Cases

*Appeal of Long,*
23 Pa. 297 (1854) ..................................................................... 38

*Bailey v. Skelly Oil Co.,*
110 P.2d 746 (Kan. 1941) .......................................................... 39

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC,*
519 S.W.3d 76 (Tex. 2017) ........................................................ 35

*Barshop v. Medina Cnty. Underground Water Conservation Dist.,*
925 S.W.2d 618 (Tex. 1996) ......................................................... 9

*Bell v. Craig,*
555 S.W.2d 210 (Tex. App.—Dallas 1977, no writ) ..................13

*Bradley v. McCrabb,*
Dallam 504 (Tex. 1843) ............................................................. 33

*Branch v. Smith,*
538 U.S. 254 (2003) ................................................................... 32

*Chambers-Liberty Counties Navig. Dist. v. State,*
575 S.W.3d 339 (Tex. 2019) ........................................... 7, 8, 9, 21

*Chen v. Razberi Techs., Inc.,*
645 S.W.3d 773 (Tex. 2022) ......................................................11

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009) ......................................................15

*City of Fort Worth v. Pridgen,*
653 S.W.3d 176 (Tex. 2022) ...................................................... 29

*City of Houston v. Swinerton Builders, Inc.,*
233 S.W.3d 4 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ....... 35, 36

*City of San Benito v. Rio Grande Valley Gas Co.,*
109 S.W.3d 750 (Tex. 2003) ......................................................17

*Clark v. Clark,*
638 S.W.3d 829 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ......13

*Clark v. Martinez*,
543 U.S. 371 (2005) ..................................................... 37

*Collins v. D.R. Horton-Tex. Ltd.*,
574 S.W.3d 39 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ................. 20

*Collins v. Moroch*,
339 S.W.3d 159 (Tex. App.—Dallas 2011, pet. denied) ..................................... 24

*Ctr. Rose Partners, Ltd. v. Bailey*,
587 S.W.3d 514 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ....................... 24

*Egypt Land Devs., LP v. AXA Seguros, S.A. de C.V.*,
2022 WL 3905768 (Tex. App.—Beaumont 2022, no pet.) ................................. 13

*Est. of Williams*,
2024 WL 950681 (Tex. App.—San Antonio 2024, no pet.) ................................ 7

*Ex parte Foster*,
188 S.W.2d 382 (1945) .................................................................................. 17

*Fiess v. State Farm Lloyds*,
202 S.W.3d 744 (Tex. 2006) ......................................................................... 32

*Flast v. Cohen*,
392 U.S. 83 (1968) ....................................................................................... 30

*Franks v. Bowman Transp. Co.*,
424 U.S. 747 (1976) ..................................................................................... 30

*Galveston, Hous. & San Antonio Ry. v. Lynch*,
55 S.W. 389 (Tex. App.—San Antonio 1899, writ ref'd) .................................. 39

*Gerjets v. Davila*,
116 S.W.3d 864 (Tex. App.—Corpus Christi 2003, no pet.) .............................. 13

*Giles v. Poole*,
239 S.W.2d 665 (Tex. App.—Austin 1951, pet. dism'd) ................................... 13

*Graef v. Chemical Leaman Corp.*,
106 F.3d 112 (5th Cir. 1997) ........................................................................ 20

*Greater Hous. P'ship v. Paxton*,
468 S.W.3d 51 (Tex. 2015) ..................................................................... 26, 34

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*,
793 S.W.2d 652 (Tex. 1990) ................................................................ 23, 24, 25

iv

*Harris County v. CarMax Auto Superstores Inc.*,
177 F.3d 306 (5th Cir. 1999) ..................................................................17

*Hayes Int'l Corp. v. McLucas*,
509 F.2d 247 (5th Cir. 1975) .................................................................... 5

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012) ................................................................... 10

*Holmes v. Eiland Coffee At Canyon Creek, LLC*,
2023 WL 3836431 (Tex. App.—Dallas 2023, no pet.) .......................... 7

*In re Ace Real Prop. Invs., LP*,
2018 WL 915192 (Tex. App.—Beaumont 2018) ................................... 20

*In re City of Georgetown*,
53 S.W.3d 328 (Tex. 2001) ..................................................................... 32

*In re Est. of Ferdinand Marcos Hum. Rts. Litig.*,
94 F.3d 539 (9th Cir. 1996) ................................................................... 16

*In re Evans*,
130 S.W.3d 472 (Tex. App.—Houston 2004, pet. dism'd) ................... 14

*In re Geomet Recycling LLC*,
578 S.W.3d 82 (Tex. 2019) ................................................ 24, 28, 34, 37

*In re Helena Chem. Co.*,
286 S.W.3d 492 (Tex. App.—Corpus Christi 2009) ........................... 26

*In re Lumbermens Mut. Cas. Co.*,
184 S.W.3d 718 (Tex. 2006) ..........................................................*passim*

*In re Tex. Educ. Agency*,
441 S.W.3d 747 (Tex. App.—Austin 2014) .......................................... 32

*In re Tex. Educ. Agency*,
619 S.W.3d 679 (Tex. 2021) ................................................. 28, 33, 37

*In re Waterstone Owners Ass'n, Inc.*,
2018 WL 4016860 (Tex. App.—Austin 2018) ..................................... 20

*Jernigan v. Jernigan*,
677 S.W.2d 137 (Tex. App.—Dallas 1984, no writ) ........................... 14

*Jones v. Springs Ranch Co.*,
642 S.W.2d 551 (Tex. App.—Amarillo 1982, no pet.) ........................ 25

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ...................................................... 10

*Kramer v. Kastleman*,
508 S.W.3d 211 (Tex. 2017) ....................................................... 20

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .................................................................. 30

*Landry v. Burge*,
2000 WL 1456471 (Tex. App.—Dallas 2000, no pet.) ...................................... 14

*Le v. Kilpatrick*,
112 S.W.3d 631 (Tex. App.—Tyler 2003, no pet.) ........................................ 24, 30

*Mahoney v. Commonwealth*,
174 S.E. 817 (Va. 1934) ............................................................. 38

*Marino v. Lenoir*,
526 S.W.3d 403 (Tex. 2017) ......................................................... 38

*Martin v. Alamo Cmty. Coll. Dist.*,
353 F.3d 409 (5th Cir. 2003) ....................................................... 39

*Morath v. Lewis*,
601 S.W.3d 785 (Tex. 2020) ......................................................... 28

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................. 30

*Oryx Cap. Int'l, Inc. v. Sage Apartments, L.L.C.*,
167 S.W.3d 432 (Tex. App.—San Antonio 2005, no pet.) .................................. 35

*Perry v. Cohen*,
272 S.W.3d 585 (Tex. 2008) .......................................................... 11

*Pope v. United States*,
323 U.S. 1 (1944) .................................................................... 33

*Q'Max Am., Inc. v. Screen Logix, LLC*,
2016 WL 796838 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ............. 2, 13, 14

*R.M.S. Titanic, Inc. v. Haver*,
171 F.3d 943 (4th Cir. 1999) ........................................................ 16

*Renaissance Med. Found. v. Lugo*,
2025 WL 1478694 (Tex. 2025) ........................................................ 27

*Roccaforte v. Jefferson County*,
341 S.W.3d 919 (Tex. 2011) .................................................... 24, 25, 26

*Rockhill v. Hanna*,
56 U.S. (15 How.) 189 (1853) ............................................................ 39

*Rowntree v. Peck Furniture Co.*,
248 S.W. 26 (Tex. [Comm'n Op.] 1923) .............................................. 5

*San Jacinto River Auth. v. City of Conroe*,
688 S.W.3d 124 (Tex. 2024) ............................................................... 5

*San Jacinto River Authority v. Gonzalez*,
657 S.W.3d 713 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ........... 34, 35, 36

*San Jacinto River Authority v. Lewis*,
629 S.W.3d 768 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ...................... 34

*Sayre v. Mullins*,
681 S.W.2d 25 (Tex. 1984) ................................................................ 37

*SBI Invs., LLC v. Quantum Materials Corp.*,
2018 WL 1191854 (Tex. App.—Austin 2018, no pet.) ........................................ 13

*SEC v. Stanford Int'l Bank, Ltd.*,
112 F.4th 284 (5th Cir. 2024) ............................................................ 14

*Speer v. State*,
2 Tex. Ct. App. 246 (1877) ............................................................... 38

*State v. Loe*,
692 S.W.3d 215 (Tex. 2024) ...................................................... 9, 10, 11

*State v. Naylor*,
466 S.W.3d 783 (Tex. 2015) .......................................................... 10, 22

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1987) ........................................................................ 22

*Templeton v. Nedlloyd Lines*,
901 F.2d 1273 (5th Cir. 1990) ........................................................... 20

*Tex. Adjutant Gen.'s Off. v. Ngakoue*,
408 S.W.3d 350 (Tex. 2013) .............................................................. 15

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) .............................................................. 10

*Tex. Med. Ass'n v. Tex. Workers Comp. Comm'n*,
137 S.W.3d 342 (Tex. App.—Austin 2004, no pet.) ............................................. 25

*Tex. State Bd. of Examiners of Marriage & Fam. Therapists v. Tex. Med. Ass'n*,
511 S.W.3d 28 (Tex. 2017) ......................................................................... 29

*Torrington Co. v. Stutzman*,
46 S.W.3d 829 (Tex. 2000) ......................................................................... 14

*United States v. Bd. of Sch. Comm'rs*,
128 F.3d 507 (7th Cir. 1997) ...................................................................... 14

*Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*,
195 S.W.3d 98 (Tex. 2006) ................................................................... 24, 28

*Verburgt v. Dorner*,
959 S.W.2d 615 (Tex. 1997) ........................................................................ 11

*WC 4th & Rio Grande, LP v. La Zona Rio, LLC*,
2024 WL 1138568 (Tex. App.—El Paso 2024, no pet.) ....................................... 7

*West v. Radio-Keith-Orpheum Corp.*,
70 F.2d 621 (2d Cir. 1934) ........................................................................ 14

*Worsdale v. City of Killeen*,
578 S.W.3d 57 (Tex. 2019) ......................................................................... 32

*York v. State*,
373 S.W.3d 32 (Tex. 2012) ......................................................................... 26

**STATUTES**

Act of June 4, 2003, 78th Leg., R.S., ch. 204, § 1.03, 2003 Tex. Gen. Laws
847 .................................................................................................... 31

Act of May 27, 1997, 75th Leg., R.S., ch. 1296 § 1, 1997 Tex. Gen. Laws 4936 ........ 31

Tex. Civ. Prac. & Rem. Code
§ 51.014(a) ......................................................................................... 25
§ 51.014(b) ................................................................................... *passim*

Tex. Gov't Code § 2155.076 ......................................................................... 3

**RULES**

Tex. R. App. P.
25.1(a) ............................................................................................... 36
26.1(d) ............................................................................................... 36

29.5................................................................................................................ 33

34.2................................................................................................................ 36

34.5................................................................................................................ 36

35.3................................................................................................................ 36

43(d) (1987) ................................................................................................. 33

Tex. R. Civ. P.

60 ........................................................................................................... 23, 24

385(d) (1985) .............................................................................................. 33

683................................................................................................................ 16

## REGULATIONS

1 Tex. Admin. Code

§ 353.2(11) ...................................................................................................... 2

§§ 391.301–.309 ............................................................................................... 3

## OTHER AUTHORITIES

8 AMERICAN AND ENGLISH ENCYCLOPEDIA OF LAW
(David S. Garland, et al., eds., 2d ed. 1898) ........................................ 38

BLACK'S LAW DICTIONARY (12th ed. 2024) .............................................*passim*

2 W. BLACKSTONE, COMMENTARIES ...................................................... 38

Britny Eubank & Ella Mulligan, *Health care CEO admits to hiring private
investigators to look into Texas lawmakers, patients*, KVUE.com
(Mar. 27, 2025), https://tinyurl.com/5epr5wab .................................... 6

Letter from Texas House Committee on Delivery of Government Efficiency
to Texas State Auditor (Apr. 10, 2025),
*available at* https://tinyurl.com/484rhbp9 .......................................... 6

Joan Steinman, *Shining A Light in A Dim Corner: Standing to Appeal and the
Right to Defend a Judgment in the Federal Courts*,
38 GA. L. REV. 813 (2004).................................................................13

STORM Pet. for Review, *Chambers-Liberty Counties Navig. Dist. v. State*,
No. 17-0365, 2017 WL 2351983 (Tex. May 22, 2017) ......................... 9

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY
(2002 unabridged ed.) ..................................................................*passim*

11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL
PRACTICE AND PROCEDURE § 2956 (3d ed.)................................................17

15A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3902 (3d ed.) .................................................13

## To the Honorable Fifteenth Court of Appeals:

This *accelerated* appeal has languished for seven months while the State's largest-ever procurement remains frozen. Now the Losing Plans[1]—disappointed bidders who successfully enjoined their own administrative protests—seek further delay under the guise of a jurisdictional challenge. Their transparent goal: maintain their expiring contracts while this Court sorts through procedural minutiae.

The Court should reject this gambit and immediately direct briefing according to the accelerated schedule in Rule of Appellate Procedure 38.6. This appeal will still be on the Court's docket whatever happens with the Losing Plans' motion to dismiss. So there's no good reason to hold up this appeal's resolution one day more.

Not that rejecting the Losing Plans' motion to dismiss should take long. The Losing Plans concede Commissioner Young has standing to appeal the temporary injunction. They concede Molina seeks identical relief. Under settled law, that ends the jurisdictional inquiry—when one party has standing, challenges to other parties seeking the same relief become academic. There's no jurisdictional defect to fix.

Even if relevant, Molina's standing is patent. Molina appealed after receiving notice that an injunction had been entered against it. As Justice Huddle once explained for the First Court, "so long as the appellant is personally aggrieved by the

---

[1] "Losing" is relative for the some of the Appellees—each is an incumbent contractor who's losing service areas to higher scoring plans. Wellpoint and Superior are presumptive awardees, but not in the service areas they prefer. Texas Children's and Cook Children's didn't qualify for any service areas. The plans that scored higher in relevant part, including Molina, are collectively referred to as the Winning Plans.

entry of the temporary injunction," it "has a justiciable interest in the controversy" and may seek reversal.[2] Still more, Molina is, literally, a party of record in the trial court and thus entitled to appeal. So the Losing Plans' breathless defense of the automatic stay's sanctity isn't just misguided, it's immaterial. Molina is properly an appellant in this appeal.

## Background

The Texas Health and Human Services Commission ("HHSC") conducted the State's largest procurement in history—a competitive bidding process among managed care organizations to administer the STAR and CHIP public benefit programs—for contracts potentially worth $120 billion or more over 12 years. *See* CR.3310. HHSC has been working on this procurement for nearly a decade. *See* 6.RR.233:16–234:1. Following extensive evaluation, HHSC selected Molina Healthcare of Texas, Inc. ("Molina") to serve beneficiaries in seven of Texas's thirteen service areas. CR.1487.[3]

---

[2] *Q'Max Am., Inc. v. Screen Logix, LLC*, 2016 WL 796838, at *4 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (Huddle, J.)

[3] STAR (State of Texas Access Reform) is a Medicaid managed care program in Texas that provides healthcare coverage to low-income children, pregnant women, and families. Medicaid is a federal-state public benefit program that pays for medical care and services. CHIP (Children's Health Insurance Fund) is similar, covering children in families that earn too much money to qualify for Medicaid but can't afford to buy private insurance. Broadly speaking, Texas pays managed care organizations like the non-government parties here set amounts to take on the risk of paying for STAR and CHIP beneficiaries' health care, *see, e.g.*, 1 Tex. Admin. Code § 353.2(11)—much like an employer and employee pay premiums to a health insurer to take on the risk of paying for the employee's health care.

The Losing Plans pursued administrative protests as provided for in statute and regulation. *See* CR.3315 n.1, 4717 n.2, 4249–50, 4264; Tex. Gov't Code § 2155.076; 1 Tex. Admin. Code §§ 391.301–.309. Those administrative proceedings remain pending because the Losing Plans simultaneously sued to permanently enjoin the procurement, including their own protests. *See, e.g.*, CR.117, CR.1851, 1862, 2581. Their petitions specifically attack Molina by name, arguing Molina can't legally receive the contracts. *See, e.g.*, CR.3318, 3329, 4742–43.

On October 4, 2024, without naming Molina as a defendant, the Losing Plans obtained a sweeping temporary injunction. At their express request, the district court enjoined not only Commissioner Young but also "all other persons or entities in active concert or participation with" her from "entering into" or "taking action to perform any contracts resulting from or in connection with the STAR & CHIP RFP." CR.5883. The court ordered the Commissioner to notify all bound persons and entities. CR.5884.

HHSC complied, notifying Molina of the injunction on October 15, 2024. Molina Resp. App. Tab 1.

Less than a week after receiving the court-ordered notice of the injunction from HHSC—and within the accelerated time-frame to appeal a temporary injunction—Molina intervened and appealed. *See* CR.5946–53, CR.5964–65. Less than 90 minutes before Molina intervened, Commissioner Young likewise appealed the temporary injunction, as well as the district court's denial of Young's plea to the

jurisdiction. *See* CR.5958–60; *compare* CR.5961 (the Commissioner's notice of appeal submitted "10/21/2024 6:12:17 PM"), *with* CR.5956 (Molina's plea in intervention submitted "10/21/2024 8:31:29 PM").

The parties then agreed to abate this appeal during the legislative session, where the Losing Plans unsuccessfully lobbied to overturn the procurement legislatively. The appeal has now been pending over seven months without any merits briefing.

## Argument

The Court should order that merits briefing begin immediately while it considers the Losing Plans' motion. Upon that consideration, it should deny the Losing Plans' motion.

### I. Merits Briefing Should Begin Immediately.

The Losing Plans have moved to dismiss Molina's appeal. Their motion is a smokescreen for the more valuable relief they seek. In an Orwellian flourish, the Losing Plans make a request for "Expedited Consideration" that asks the Court to again *pause* this appeal—to decide their motion to dismiss before allowing the appeal to "proceed[] any further, including before a briefing schedule is established." Mot. 33.

No legitimate purpose justifies further delay. No matter how the Court rules on Molina's participation, this appeal proceeds—Commissioner Young remains an appellant pursuing the same relief. Unsurprisingly then, the Losing Plans don't identify any advantage to waiting. And their pleas of prejudice lack substance. Most

importantly, none of their supposed prejudice is tied to beginning merits briefing. At the very least, then, the Court should immediately set a briefing schedule.

"The courts, as well as litigants, are interested in the reasonable dispatch of business, in such manner as not to sacrifice any substantial right of either party." *Rowntree v. Peck Furniture Co.*, 248 S.W. 26, 29 (Tex. [Comm'n Op.] 1923). And so the Supreme Court bemoans time spent on "procedural and jurisdictional skirmishes distantly related to the merits of the dispute." *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 128 (Tex. 2024). No substantial right is at risk, so the merits of this appeal need not and should not sit idle while this procedural and jurisdictional skirmish is resolved.

## A.  The Losing Plans' goal is delay.

Courts have long recognized the "strong public interest in avoiding disruptions in procurement." *Hayes Int'l Corp. v. McLucas*, 509 F.2d 247, 258 (5th Cir. 1975). Even so, litigation continues to disrupt and delay the underlying procurement—the largest in Texas history and one of the most complex.[4] First, the Losing Plans sued during their pending administrative protests, raising identical arguments in both forums. Next, they obtained a temporary injunction on the remarkable theory that HHSC's Commissioner lacks authority to continue an ongoing HHSC procurement. Then, they used the delay caused by that injunction to lobby for legislative intervention in the ongoing procurement, but succeeded only in raising the

---

[4] *See* CR.254–836 (the nearly 600-page RFP).

Legislature's ire.[5] During that failed mission, this appeal was abated for seven months. Now, the Losing Plans seek further delay under the guise of a jurisdictional motion to dismiss that has nothing to do with jurisdiction and can't affect this appeal's scope.

This pattern reveals delay as an end in itself. As incumbent contractors, the Losing Plans win by losing slowly. They're able to continue receiving tax dollars under their existing contracts until new plans take their place. Under the noticed awards, the number of Texas service areas in which Superior operates a STAR or CHIP plan will drop from nine to three, and Superior will lose several hundred thousand members. CR.3126, 3516–17. Wellpoint's STAR and CHIP footprint will shrink from nine service areas to six, losing its incumbent contract in the Dallas County and Bexar County service areas, where Wellpoint presently enjoys a large share of the market. CR.4248, 4251. Cook Children's wasn't selected for any service area and stands to lose its 110,000 STAR and CHIP members in the Tarrant County service area. CR.14. And Texas Children's, which operates in the Jefferson County and Harris County service areas, will lose all 425,000 of its STAR & CHIP members. CR.79.

---

[5] *See, e.g,* Britny Eubank & Ella Mulligan, *Health care CEO admits to hiring private investigators to look into Texas lawmakers, patients*, KVUE.com (Mar. 27, 2025), https://tinyurl.com/5epr5wab; Letter from Texas House Committee on Delivery of Government Efficiency to Texas State Auditor (Apr. 10, 2025), *available at* https://tinyurl.com/484rhbp9 (formally requesting the State Auditor's assistance in investigating possible financial irregularities and contract violations by Appellee Superior Health Plan).

HHSC issued its notice of intent to award on March 7, 2024. CR.211. Through their pending administrative protests, this lawsuit and its seven-month abatement during the recently completed legislative session, the execution of the contracts has been delayed by 16 months and counting. If this appeal succeeds in allowing HHSC to complete the procurement, Commissioner Young will still need to decide the administrative protest appeals before the Agency can execute contracts with the selected vendors. Every day that this appeal drags on is another day the Losing Plans are able to extend their incumbencies—not on merit, but by nuisance suit.

**B. Further delay serves no legitimate purpose.**

Nothing justifies holding off merits briefing in this appeal. The standard practice in appellate courts is not to delay deciding the merits in favor of jurisdictional challenges, but to carry jurisdictional challenges with the merits and decide both at the same time. *See Chambers-Liberty Counties Navig. Dist. v. State*, 575 S.W.3d 339, 355–56 (Tex. 2019).[6] The Losing Plans offer no compelling reason to deviate.

In fact, the Losing Plans' own motion *supports* allowing merits briefing to proceed immediately because their arguments depend on what the appellants will argue in their merits briefs. Relying on a snippet of Supreme Court dicta, the Losing Plans insist that Molina can't satisfy the virtual representation doctrine because

---

[6] *See also, e.g.*, *WC 4th & Rio Grande, LP v. La Zona Rio, LLC*, 2024 WL 1138568, at *6 (Tex. App.—El Paso 2024, no pet.); *Est. of Williams*, 2024 WL 950681, at *2 (Tex. App.—San Antonio 2024, no pet.); *Holmes v. Eiland Coffee At Canyon Creek, LLC*, 2023 WL 3836431, at *1 (Tex. App.—Dallas 2023, no pet.).

Commissioner Young has not "abandoned its litigation posture, leaving [Molina] without appellate review of arguments it wishes to make to preserve its interest." Mot. 30–31 (quoting *Chambers-Liberty*, 575 S.W.3d at 355). Even had the Losing Plans got the law right, it's impossible to know right now whether the Commissioner will abandon any issue raised below or will make the same arguments as Molina against the temporary injunction. And it would be senseless to assume the Commissioner's and Molina's briefing will be identical and dismiss Molina now, only to have Molina re-intervene should that assumption turn out incorrect. So there's no way to grant the Losing Plans' motion *before* merits briefing

Even more, the Losing Plans will not suffer any prejudice should briefing proceed immediately. The Losing Plans claim prejudice from Molina being a party, *see* Mot. 31–32, but none that has anything to do with *merits briefing*. Rather, the Losing Plans acknowledge that they're going to get a brief from Molina, whatever its title. *See* Mot. 33. So there's no reason to delay the inevitable. In any event, as explained in Part II.B.1 below, the "prejudice" the Losing Plans claim from Molina's presence is speculative and otherwise not cognizable.

## II. The Court Should Deny the Motion to Dismiss.

The Losing Plans' motion to dismiss fails for several independent reasons. *First*, their motion purports to challenge the Court's jurisdiction while at same time conceding that jurisdiction exists. *Second*, Molina has standing no matter what the effects are of Texas Civil Practice and Remedies Code § 51.014(b)'s automatic stay.

***Third***, even if the § 51.104(b) stay were relevant, it could not prevent Molina's standing. Section 51.014(b)'s stay of "the commencement of a trial" and "all other proceedings in the trial court" doesn't prevent Molina's intervention because a self-executing filing is not within the fair meaning of those terms.

### A. Molina's standing is not a jurisdictional issue.

The Losing Plans move to dismiss Molina's appeal for "lack of jurisdiction." Mot. 1. Black-letter law easily disposes of that motion. When two or more parties seek identical relief, one party's standing makes the other's irrelevant to a court's jurisdiction. The Losing Plans don't and can't challenge Commissioner Young's standing here, and Molina and the Commissioner seek reversal of the same temporary injunction. Because the Commissioner indisputably has standing, the Court "can proceed to the merits with [its] jurisdiction secure and without addressing whether [other appellants] also have standing." *State v. Loe*, 692 S.W.3d 215, 226 (Tex. 2024); *accord, e.g.*, *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 627 (Tex. 1996). Molina's "standing to appeal," Mot. 1, is irrelevant, and that's reason enough to reject the Losing Plans' motion to dismiss.[7]

---

[7] Neither of the Supreme Court decisions dismissing appeals cited by the Losing Plans—*State v. Naylor*, 466 S.W.3d 783 (Tex. 2015), and *Chamber-Liberty*—is to the contrary because this rule didn't apply in either. In *Naylor*, there was only one appellant. And in *Chambers-Liberty*, the dismissed petitioner sought relief that went beyond the relief sought by the petitioner with indisputable standing. *See* STORM Pet. for Review, *Chambers-Liberty Counties Navig. Dist. v. State*, No. 17-0365, 2017 WL 2351983, at *18 (Tex. May 22, 2017).

The party-of-record rule the Losing Plans press is merely a shorthand for the underlying and controlling jurisdictional mandate: every court's jurisdiction depends on *standing*. *See State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015) (noting that "appellate standing is typically afforded 'only to parties of record'").

Standing, however, need only be established by one party for each request for non-monetary relief. *See, e.g.*, *Loe*, 692 S.W.3d at 226. That's true for suing *and* appealing. *See, e.g.*, *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 456–57 (5th Cir. 2005) (rejecting argument that "appellants lack standing to appeal because neither was a party at the district court" after resolving one appellant's standing to appeal and so ignoring the other's); *cf. Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("Because standing is a constitutional prerequisite . . . under both federal and Texas law, [Texas courts] look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield."). In both forums, "[t]he motivating concern remains the same: to determine whether the court has the constitutional authority to decide the case (or the claim) before it." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012).

Commissioner Young's appeal seeks to reverse the district "court's order . . . granting Plaintiffs' request for a temporary injunction." CR.5958. The Losing Plans recognize the Commissioner has standing. *See* Mot. 2 ("The crux of . . . this appeal[] is whether the Commissioner is acting *ultra vires* . . . ."). And Molina seeks no greater relief than the Commissioner. *See* Mot. 30–31 (complaining that Molina

and the Commissioner may make the same arguments). As a result, Molina's standing is irrelevant and the Court may "proceed to the merits with [its] jurisdiction secure." *Loe*, 692 S.W.3d at 226.

The Court has no pressing need to evaluate Molina's standing and every reason not to. The Supreme Court has repeatedly instructed that "appellate courts should reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam); *accord In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723 (Tex. 2006) ("favor[ing] the resolution of cases based upon substantive principles"). And that appeals should not be disposed of on "harmless procedural defects." *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997). Similarly, it is a "well-established principle that 'a court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction.'" *Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 775 (Tex. 2022) (citation omitted). Even if the Losing Plans were right (they're not) that Molina's intervention is technically ineffective due to § 51.014(b)'s stay, that intervention and concomitant notice of appeal were bona fide attempts to appeal an injunction that unquestionably aggrieves Molina by halting a procurement in which Molina is the presumptive awardee. And the 90-minute gap between Commissioner Young filing her notice of appeal and Molina's intervention is a harmless procedural defect.

### B. Whatever § 51.014(b)'s reach, Molina is a proper party to this appeal.

Should the Court delve further, it will find that Molina has standing to appeal. The Losing Plans' motion makes much of the automatic stay, insisting it prevented Molina becoming a party of record. *See* Mot. 1, 7–18. But the stay is immaterial for at least two reasons. ***One***, Molina has standing whether or not it's a party in the trial court because the appealed temporary injunction aggrieves and binds Molina. ***Two***, Molina is, at a minimum, a party of record in the district court, and whether it should be party isn't before this Court.

#### 1. The temporary injunction alone is enough to give Molina standing.

"*Generally* only parties of record may appeal a trial court's judgment" or order. *In re Lumbermens*, 184 S.W.3d at 723 (emphasis added). But that general rule doesn't control all cases. *See id.* at 729 (allowing appeal by nonparty). And it doesn't control here. Two overlapping conclusions show Molina may appeal the district court's temporary injunction regardless of intervention: The district court's injunction adversely affects and binds Molina, and Molina is a party under the virtual representation doctrine.

#### a. The temporary injunction adversely affects Molina.

"[S]o long as the appellant is personally aggrieved by the entry of the temporary injunction," it "has a justiciable interest in the controversy" and may appeal, even if not bound by the injunction. *Q'Max Am., Inc. v. Screen Logix, LLC*, 2016 WL

796838, at *4 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (Huddle, J.)[8]; *see also* 15A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3902 (3d ed.) ("Wright & Miller") (explaining that "standing to appeal" requires an "injury caused by the judgment"); Joan Steinman, *Shining A Light in A Dim Corner: Standing to Appeal and the Right to Defend a Judgment in the Federal Courts*, 38 Ga. L. Rev. 813, 838 (2004) ("Appellants resemble plaintiffs in that both perceive themselves to have suffered a wrong for which courts can provide a remedy.").

If the Losing Plans are aggrieved by the STAR-CHIP procurement because it so far has not awarded them service areas they want, Molina is necessarily aggrieved by an injunction that halts the procurement in which Molina is the presumptive awardee for seven service areas. Molina's position directly parallels the appellant's in *Giles v. Poole*, where the Austin Court held a "high bidder for the leases advertised by the [School Land] Board . . . was adversely affected by [a] temporary injunction" halting the government's leasing process even though not enjoined itself. 239 S.W.2d 665, 666 (Tex. App.—Austin 1951, pet. dism'd).

---

[8] *Accord, e.g.*, *SBI Invs., LLC v. Quantum Materials Corp.*, 2018 WL 1191854, at *4 (Tex. App.—Austin 2018, no pet.) (Field, J., sitting); *Egypt Land Devs., LP v. AXA Seguros, S.A. de C.V.*, 2022 WL 3905768, at *1 (Tex. App.—Beaumont 2022, no pet.); *Clark v. Clark*, 638 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Gerjets v. Davila*, 116 S.W.3d 864, 870 (Tex. App.—Corpus Christi 2003, no pet.); *Bell v. Craig*, 555 S.W.2d 210, 211–12 (Tex. App.—Dallas 1977, no writ).

The Losing Plans attempt to distinguish *Q'Max* through extraneous facts—that Q'Max was already a party to the litigation and that Q'Max had existing contracts with persons enjoined. Mot. 15-16. But Justice Huddle's reasoning turned on one principle: personal aggrievement by the injunction creates standing to appeal. That's why she found support in a Dallas Court opinion holding that "*non-parties that are personally aggrieved by temporary injunction have standing to appeal.*" *Q'Max*, 2016 WL 796838, at *4 (citing *Landry v. Burge*, 2000 WL 1456471, at *4 (Tex. App.—Dallas 2000, no pet.) (ndp)). That principle has strong roots. *See West v. Radio-Keith-Orpheum Corp.*, 70 F.2d 621, 624 (2d Cir. 1934) (Hand, L., J.) (recounting that nonparties have long been allowed to appeal injunctions affecting their interest). And it controls here.

### b. The temporary injunction binds Molina.

"[I]f an injunction extends to non-parties, 'they may appeal from it.'" *SEC v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 291 (5th Cir. 2024) )); *see also, e.g.*, *Jernigan v. Jernigan*, 677 S.W.2d 137, 140 (Tex. App.—Dallas 1984, no writ) (nonparty bound by judgment may appeal) (cited approvingly in *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000)); *In re Evans*, 130 S.W.3d 472, 478 (Tex. App.—Houston 2004, pet. dism'd) (same). This rule reflects common sense—"[a]ny other rule would give more rights to an adjudicated wrongdoer than to an innocent person." *United States v. Bd. of Sch. Comm'rs*, 128 F.3d 507, 511 (7th Cir. 1997) (Posner, C.J.).

The temporary injunction doesn't just personally aggrieve Molina, its plain language encompasses Molina:

> Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP; and

As requested by the Losing Plans, the injunction enjoins nonparties—"all other persons or entities in active concert or participation"—from "entering into . . . [or] perform[ing] any contracts resulting from or in connection with the STAR & CHIP" procurement. CR.5883. Moreover, the Commissioner *is* the State and HHSC in this litigation. *See, e.g.*, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009); *Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013). And who besides the plaintiff Losing Plans could "enter[] into" and "perform[]" those lost contracts "resulting from" the procurement? Only the winning plans, including Molina. Expressly named or not, Molina is an intended object of the injunction.

HHSC understood this, formally notifying Molina pursuant to the court's order to notify "her officers, agents, servants, employees, and attorneys, *as well as* any persons or entities in active concert or participation" with Commissioner Young. CR.5884 (emphasis added); Molina Resp. App. Tab 1. With this notice, the "injunction clearly confronts [Molina] with the choice of either conforming its conduct to the dictates of the injunction or ignoring the injunction and risking contempt

15

proceedings." *In re Est. of Ferdinand Marcos Hum. Rts. Litig.*, 94 F.3d 539, 544 (9th Cir. 1996). That's "sufficient injury-in-fact to give" Molina "standing to challenge the injunction." *Id.* (allowing nonparty to appeal injunction despite plaintiffs' assurances that they would not seek contempt against the nonparty).

The Losing Plans now try to rewrite the broad injunction they verbatim requested, claiming it "concern[s] only the Commissioner's conduct and bind[s] only her and her agents" in "conducting the procurement." Mot. 3, 25. But they can't escape the injunction's express terms, which go beyond "officers, agents, servants, employees, and attorneys," to also enjoin "all other persons or entities in active concert or participation" with Commissioner Young from "entering into . . . or perform[ing] any contracts." CR.5883–84; *see In re Est. of Ferdinand Marcos*, 94 F.3d at 544; *see also R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 955 (4th Cir. 1999) ("RMST maintained that the district court had the power to enjoin DOE, and yet, after it successfully persuaded the court to do just that, it takes the position that DOE may not challenge entry of the injunction because DOE elected not to appear before the district court. We believe that this position is untenable.").[9]

---

[9] The Losing Plans also cite their petitions and briefing as if those documents could substitute for the temporary injunction's plain import. Mot. 23–24. They can't. *See* Tex. R. Civ. P. 683 ("Every order granting an injunction . . . shall describe in reasonable detail and *not by reference to the complaint or other document*, the act or acts sought to be restrained . . . ." (emphasis added)). And so they don't affect Molina's standing to appeal.

### c. The temporary injunction triggers virtual representation.

Because the injunction binds Molina, virtual representation provides an independent basis for Molina's appeal.

Nonparties bound by an injunction are "persons so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding." 11A WRIGHT & MILLER § 2956 (3d ed.). Thus, "under Texas law," "a non-party who is . . . *virtually represented* by a party to a lawsuit is bound by the judgment therein." *Harris County v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 316 (5th Cir. 1999) (emphasis added); *accord Ex parte Foster*, 188 S.W.2d 382, 384–85 (1945).

Parties virtually represented in the district court may appeal without intervention. *See In re Lumbermens*, 184 S.W.3d at 722. And because virtual representation is also a justification for binding nonparties to court orders, "the most important consideration" in applying this equitable doctrine "is whether the appellant is bound." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 755 (Tex. 2003). The injunction binds Molina and therefore the virtual representation doctrine allows Molina's appeal.

If necessary, other factors too favor Molina's appellant status:

### *Identity of Interest*

As in *In re Lumbermens*, Molina and Commissioner Young share "the same" "ultimate aim—to reverse" the district court's injunction. 184 S.W.3d at 724. Different legal theories do not defeat identity. *Id.*

The Losing Plans don't dispute this shared interest but object that Molina's interest is narrower than Commissioner Young's. *See* Mot. 26–27. Nothing in Texas case law, however, suggests that the virtual representation doctrine requires identity across every possible interest. The insured and insurer in *In re Lumbermens* surely had different aims for any money saved by avoiding liability there, but that didn't preclude identity of interest. What matters is that Molina and the Commissioner are both bound by the injunction; and, independently, that they share an interest in allowing the enjoined procurement to continue.

### *Timely Intervention*

Molina appealed less than a week after receiving notice of the temporary injunction that binds it. That lapse of time is de minimis compared to the "*ten weeks*" the intervenor in *In re Lumbermens* waited after discovering that its interests were at stake. 184 S.W.3d at 727 (emphasis added).

The Losing Plans grouse that Molina didn't intervene until after the district court issued the temporary injunction. Mot. 28-29. But the Losing Plans' concession that their "applications for temporary injunctions . . . focused on enjoining [Commissioner Young] from engaging in *ultra vires* action," not "private parties

like . . . Molina," Mot. 24, defeats their suggestion that Molina should have known to intervene earlier.

In any case, the Losing Plans point to no prejudice from *the timing* of Molina's intervention, which is the only prejudice that matters in this timeliness inquiry. *See In re Lumbermens*, 184 S.W.3d at 727. Rather, all their alleged prejudice stems from Molina being a party, *see* Mot. 31–32, and so would be the same no matter when Molina intervened. Therefore, the timing of Molina's intervention can't undermine its standing to appeal.

### *No Prejudice*

"[O]ther considerations" may "weigh against applying the doctrine," *In re Lumbermens*, 184 S.W.3d at 725, but the Losing Plans identify none. The "prejudice" the Losing Plans proclaim is not cognizable because their concerns are based on pure speculation and reflect nothing more than the ordinary result of having multiple parties in a case.

The Losing Plans raise four concerns: (1) "Molina would have rights unavailable to *amici curiae*, such as the right to participate at oral argument, the right to contest motions (including case-dispositive motions), and the right to appeal an adverse decision"; (2) "Molina *could* prevent the Commissioner from exercising control over her appeal, with *potentially* adverse consequences for Appellees"; (3) "Molina *could* attempt to interfere with any *potential* agreements Appellees and the Commissioner

may wish to reach"; and (4) "allowing . . . Molina to participate as parties will unduly complicate the appeal." Mot. 31–32 (emphases added).

The Losing Plans' fears—even if they were legitimate[10]—are universally contingent. But here, as in all other areas, "speculative" prejudice is no prejudice. *See, e.g.*, *Kramer v. Kastleman*, 508 S.W.3d 211, 231 & n.100 (Tex. 2017); *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 47 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *In re Waterstone Owners Ass'n, Inc.*, 2018 WL 4016860, at \*5 (Tex. App.—Austin 2018) (orig. proceeding); *In re Ace Real Prop. Invs., LP*, 2018 WL 915192, at \*3 (Tex. App.—Beaumont 2018) (orig. proceeding).

Each complaint fails in any event because each is nothing more than the ordinary effect of having more than two parties in litigation. In *In re Lumbermens*, for example, the insurance company appellant intervened with the aim of blowing up a deal between its insured (the original appellant) and the appellee. *See* 184 S.W.3d at 721–22. Prejudice that would occur in *every* instance isn't really prejudice at all. *Cf., e.g.*, *Graef v. Chemical Leaman Corp.*, 106 F.3d 112, 118 (5th Cir. 1997) ("Evidence is not prejudicial merely because admitting it may sway the jury against a party."); *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1276 (5th Cir. 1990) (loss of "tactical advantage" isn't cognizable prejudice).

On top of that, the source of "prejudice" the Losing Plans point to—multiple parties—would remain even if Molina and Aetna were gone. There are four appellees

---

[10] Really, the Losing Plans' fears just confirm that Molina's interest *is* at stake in this appeal.

20

with conflicting aims, *see, e.g.*, CR.2664–68 (opposing consolidation), any one of whom could participate in oral argument, multiply filings (note the Losing Plans' three separate Rule-29.3 motions), prevent control by the others, scuttle an agreement, and otherwise complicate the appeal.[11] Molina's presence doesn't change the nature of this appeal.

### *The* Chambers-Liberty *Dictum*

The Losing Plans mischaracterize dictum from *Chambers-Liberty* as establishing a virtual representation requirement that the original appellant abandon some position. Mot. 30–31; *but see* Mot. 28 n.8 (arguing instead that "[e]quitable considerations . . . cannot create appellate standing").[12] In fact, the Supreme Court expressly declined to "address whether the virtual-representation doctrine only applies where the party with the same interests as the party seeking intervention has abandoned its position." 575 S.W.3d at 355.

The Losing Plans' argument merely exemplifies the risk in relying on dicta. Had the Supreme Court addressed the issue, it would have found that *In re*

---

[11] And, of course, it's the Losing Plans who have complicated this appeal with their current motion inviting the Court to address issues far from the merits, like the reach of the district court's injunction and the meaning of Texas Civil Practice & Remedies Code § 51.014(b).

[12] The Supreme Court said the putative party there (STORM) would have had a "much stronger" case for participation if the other petitioner "had for some reason abandoned its litigation posture, leaving STORM without appellate review of arguments it wishes to make to preserve its interest." 575 S.W.3d at 355. A comment on a hypothetical argument is necessarily "unnecessary to the decision in the case." *Dictum*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining *obiter dictum*)

21

*Lumbermens* applied the virtual representation doctrine *despite* the appellants' divergence of positions, not because of it:

> [T]hat Lumbermens' interest in pursuing the choice-of-law issue had diverged from Cudd's by the time Lumbermens filed its intervention motion **does not defeat** Lumbermens' ability to participate in the appeal pursuant to the virtual-representation doctrine.

184 S.W.3d at 725 (emphasis added). The Court considered the insured's abandonment of a position as support *only* for the timeliness of the insurer's intervention, *not* its propriety. *See id.* at 727–28. *In re Lumbermens*'s reasoning forecloses the Losing Plans' proposed new requirement for virtual representation.

### 2. Molina is a party of record in the district court.

Molina is a proper party here for the additional reason that it's a party of record in the district court and "parties of record" have "the right to appeal." *Naylor*, 466 S.W.3d at 789; *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375–76 (1987) ("An intervenor, whether by right or by permission, normally has the right to appeal an adverse" final judgment or appealable order "by a trial court.").

Molina *is* a party of record in the trial court notwithstanding the Losing Plans' repeated insistence to the contrary. From the district court's docket:

| | |
|---|---|
| **Defendant** | CECILE ERWIN YOUNG EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION |
| | CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUI |
| | MOLINA HEALTHCARE OF TEXAS, INC. |

Molina Resp. App. Tab 2. And from the most recent district court filing:

CASE NUMBER: D-1-GN-24-003839

COOK CHILDREN'S HEALTH PLAN,SUPERIOR HEALTHPLAN, INC.,TEXAS CHILDREN'S HEALTH PLAN,WELLPOINT INSURANCE COMPANY VS. CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION,MOLINA HEALTHCARE OF TEXAS, INC.

CR.5996. The *record* reveals that Molina is a *party*. The Losing Plans may close their eyes to reality but they can't will it away.

The Losing Plans' arguments go only to whether Molina *should* be a party of record, not whether it *is*, and the "should" question isn't before the Court.

### a. This Court cannot adjudicate Molina's intervention.

Molina appears as a party of record below because intervention is automatic and ministerial. Rule 60 provides: "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. Under this Rule, "[a]n intervenor is not required to secure the court's permission to intervene[.]" *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). "A non-party successfully intervenes in a case if he files a plea in intervention prior to the entry of judgment and the court does not strike the plea on the motion of a party." *Collins v. Moroch*, 339 S.W.3d 159, 163 (Tex. App.—Dallas 2011, pet. denied). Thus, "[i]ntervenors are parties until the trial court grants a motion to strike." *Ctr. Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 531 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

23

Section 51.014(b)'s automatic stay doesn't change the way intervening works. Even if the stay applies to party filings, *but see infra*, Part II.C.1, Molina's intervention would merely be *voidable*—that is, capable of being voided[13]—not void. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 n.1 (Tex. 2019); *accord Roccaforte v. Jefferson County*, 341 S.W.3d 919, 923 (Tex. 2011); *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (giving effect to a nonsuit filed in the district court during an automatic stay); *Le v. Kilpatrick*, 112 S.W.3d 631, 635 (Tex. App.—Tyler 2003, no pet.) (same, court-ordered stay). Molina is a party until struck.

The Losing Plans must act to void Molina's intervention. *See id*. And the necessary act is moving to strike the intervention. *See* Tex. R. Civ. P. 60 ("Any party may intervene by filing a pleading, *subject to being stricken out by the court* for sufficient cause *on the motion of any party*." (emphases added)). The Losing Plans have not filed a motion to strike in the district court. *See* Mot. 18 n.7. Without a motion to strike, Molina's party status is undisturbed. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 657 ("Without a motion to strike, the trial court abused its discretion in striking Petrolife's plea in intervention.").

The Losing Plans' motion to dismiss can't substitute for a motion to strike because "the propriety of intervention" may not be litigated "for the first time" in

---

[13] *See -able* (adj. suffix, sense 1), Webster's Third New International Dictionary (2002 unabridged ed.).

an appellate court. *Jones v. Springs Ranch Co.*, 642 S.W.2d 551, 554 (Tex. App.—Amarillo 1982, no pet.) (cited approvingly in *Guar. Fed. Sav. Bank*, 793 S.W.2d at 657); *accord Tex. Med. Ass'n v. Tex. Workers Comp. Comm'n*, 137 S.W.3d 342, 356 (Tex. App.—Austin 2004, no pet.). Only the district court may void (strike) Molina's intervention.

This principle applies with special force in this *interlocutory* appeal because (1) the district court may still have the opportunity to consider any motion to strike; and (2) had the district court denied a motion to strike, that order would not yet be appealable, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a).

### b. The regional courts of appeals decisions cited by the Losing Plans are inapposite.

The Losing Plans maintain that Aetna and Molina's pleas in intervention "did not render Aetna and Molina parties because the petitions . . . will not take effect until after this appeal is over." Mot. 8, 10. That argument ignores controlling precedent that actions violating a stay are merely "voidable, not void." *Roccaforte*, 341 S.W.3d at 923.

Saying some act has no effect is the same as saying "void"; that is, "Of no legal effect." *Void* (adj., sense 1), BLACK'S LAW DICTIONARY (12th ed. 2024); *Void* (adj., sense 7.a), WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed. 2002) ("of no legal force or effect").[14] The Losing Plans would

---

[14] Both Black's and Webster's Third order senses chronologically.

have this Court treat Molina's intervention as *temporarily* void—of "***no effect*** *until* after the stay has been lifted.*"* Mot. 10 (second emphasis added). But temporarily void is still void, *not* "voidable." *Roccaforte*, 341 S.W.3d at 923; *see also York v. State*, 373 S.W.3d 32, 40 (Tex. 2012) (recognizing that a stay that renders an action void, even temporarily, isn't a typical "stay of proceedings pending appeal"). Supreme Court precedent is "Texas law," and it's the Losing Plans, not Molina, who "simply ignore[]" it. *Contra* Mot. 12.

Eschewing binding precedent, the Losing Plans cite a handful of regional courts of appeals decisions saying that filings made during a stay are "ineffective," Mot. 10–11, but those decisions can't help the Losing Plans. Whatever the import of "ineffective" in the four cited decisions,[15] Supreme Court precedent forecloses holding that Molina's plea in intervention is of no legal effect.

---

[15] None of the four cited decisions considered whether an automatic stay requires courts to ignore reality when it comes to determining whether an appellant has standing. In fact, only one of the decisions even concerned intervention during a stay. *See In re Helena Chem. Co.*, 286 S.W.3d 492 (Tex. App.—Corpus Christi 2009) (orig. proceeding). And the stay's effect on intervention was before the court of appeals there only *after* the *trial court*'s refusal to grant the defendant's motion to strike the intervention *following* the stay's expiration. *See id.* at 495. *In re Helena Chemical* shows the correct order of operations and confirms that the Losing Plans' invocation of the stay is premature. Moreover, the courts of appeals' use of the term "ineffective" is, as often happens, a product of "happenstance rather than design," as one decision parrots another. *Greater Hou. P'ship v. Paxton*, 468 S.W.3d 51, 65 n.13 (Tex. 2015). *In re Helena Chemical* was the first to use the term, but did so **before** *Roccaforte* made clear that actions in violation a stay *do* have effect unless voided. The latter opinions merely quoted *In re Helena Chemical* and its progeny.

### C. Molina's intervention did not violate the automatic stay.

Molina is also a party of record because its intervention didn't violate the § 51.014(b) stay. The only fair reading of § 51.014(b)'s text is that it doesn't reach party filings at all, let alone filings like an intervention, whose effects are ministerial. Independently, Molina's intervention didn't violate the stay because the stay had not begun—this case presents no exception to the default rule that legal transactions on the same day are treated as occurring at the same instant.

#### 1. Filing a document is not an "other proceeding in the trial court."

Section 51.014(b) provides (emphases added):

> An interlocutory appeal under Subsection (a) . . . *stays the commencement of a trial* in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), (8), or (12) *also stays all other proceedings in the trial court* pending resolution of that appeal.

Just about any interlocutory appeal as of right will stay the start of a trial, but certain interlocutory appeals, including the appeal of an order denying a government entity's plea to the jurisdiction, "also stays other proceedings in the trial court." There's no doubt Commissioner Young's appeal of the district court's order denying the Commissioner's plea to the jurisdiction results in a § 51.014(b) stay. The dispositive question is what "all other proceedings in the trial court" means: Is a party filing that requires no judicial action an "other proceeding[] in the trial court"? Section 51.014(b)'s "'fair meaning,'" is "our interpretive North Star," and that fair meaning says no. *Renaissance Med. Found. v. Lugo*, 2025 WL 1478694, at \*8 (Tex.

27

2025) (citation omitted). The fair meaning of "other proceedings in the trial court" encompasses only judicial action in an adversarial posture, not mere filings or ministerial acts. Molina's intervention could not have violated the stay.

Recognizing that § 51.014(b)'s fair meaning isn't on their side, the Losing Plans whistle past it—they don't spend a single word trying to tether their conception of the stay's effect to § 51.014(b)'s text. Instead, they muster only unpersuasive case law and policy arguments that forget the Court's role and fail on their own terms.

### a. "Other proceedings in the trial court" means judicial action in an adversarial posture, not self-executing filings by litigants.

The Supreme Court has not answered whether a self-executing filing is an "other proceeding[] in the trial court." *Cf. Morath v. Lewis*, 601 S.W.3d 785, 788 (Tex. 2020) (declining to "consider whether a non-suit could be filed in the trial court during a section 51.014 stay"); *but cf. Univ. of Tex. Med. Branch*, 195 S.W.3d at 100 (giving effect to a nonsuit filed in the district court during a § 51.014(b) stay). So this Court's "analysis of that question begins with the statutory text imposing the stay," *In re Geomet*, 578 S.W.3d at 86, because "[w]e cannot presume the Legislature intended" § 51.014(b) "to carry broader . . . force than the enacted language describes," *In re Tex. Educ. Agency*, 619 S.W.3d 679, 683 (Tex. 2021) ("*In re TEA II*") (interpreting counter-supersedeas statute).

28

### *Ordinary Meaning and Context*

Fair meaning starts with dictionaries (but doesn't end there). "Proceedings," as the object of the stay, is the key term here. In ordinary usage, however, "proceedings" has many possible meanings just in the legal context, both broad and narrow: A "proceeding" can be "all acts and events between the time of commencement [of a lawsuit] and the entry of judgment," the "business conducted by a court or other official body; a hearing," the "procedural means for seeking redress from a tribunal," etc. *Proceeding* (n.), Black's Law Dictionary. Black's offers five senses in the main entry and then more than two dozen subentries. *See id.*, *see also Proceeding* (n., sense 2), Webster's Third (six subsenses). A self-executing filing is necessarily *not* business conducted by a court, so the ordinary meaning of "proceedings" need not encompass Molina's intervention. And context shows "proceedings" *does not* encompass Molina's intervention.

Context controls because dictionaries alone can't establish a term's meaning; they're only evidence of various possible meanings. *See City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 183 (Tex. 2022). Thus, the fair meaning of "proceedings" depends on the context in which the term appears, both from the immediate provision and from the larger corpus juris in which that provision plays its part. *See Tex. State Bd. of Examiners of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 & n.13 (Tex. 2017).

Relevant context makes plain that "proceedings" in § 51.014(b) is business conducted by a court in its judicial capacity, not by parties alone.

### *"Stays" and "in the trial court"*

The immediate context of "proceedings" in § 51.014(b) includes "stays"—the force that acts on proceedings—and "in the trial court"—proceedings' location and instrumentality. That immediate context evokes judicial action in an adversarial posture, not mere filings.

To "stay" is to "postpone[] or halt[] a proceeding, judgment, or the like." *Stay* (n., sense 1.), Black's Law Dictionary; *see Stay* (tr. vb., sense 7.a), Webster's Third ("to prevent, block, or stop . . . ."). And in the legal world, "stay" has always been associated with *judicial* action—"the disposition of the causes on [the court's] docket," or "*the business of the court." Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added) (discussing court-ordered stays). Thus, "a stay operates upon the *judicial* proceeding itself"; it "temporarily suspend[s] the source of [the court's] authority *to act.*" *Nken v. Holder*, 556 U.S. 418, 428 (2009) (emphases added). And a "minimal condition[]" for an act to be considered an exercise of "judicial power" is that the "question" acted on is "presented in an adversary context." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 754–55 (1976); *accord Microsoft Corp. v. Baker*, 582 U.S. 23, 44 (2017) (Thomas, J., concurring) ("The 'judicial Power' . . . extends only to . . . issues presented 'in an adversary context.'") (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *see Le*, 112 S.W.3d at 635 (giving effect to

nonsuit filed during court-ordered stay). A self-executing filing doesn't require judicial action and isn't adversarial, so a "stay" in this context shouldn't apply.

The prepositional modifier, "in the trial court," reinforces the idea that the stay is aimed at judicial action in an adversarial posture. "In" denotes not just location, but also instrumentality. *See In* (prep., senses 1.a, 3.a(1)), WEBSTER'S THIRD. These are not just any legally adjacent proceedings, they're *trial court* proceedings, as before "a judge or judges sitting for the hearing or trial of cases." *Court* (n., sense 3.a), WEBSTER'S THIRD; *Court* (n., main entry senses 3–4), BLACK'S LAW DICTIONARY ("A tribunal constituted to administer justice; . . . The judge or judges who sit on such a tribunal . . . ."). Filings alone are out of place in that context.

### *"The commencement of a trial" and "other proceedings"*

Zooming out a bit, the rest of § 51.014(b) confirms that filings don't fit. The Legislature wasn't writing on a clean slate when it provided for an automatic stay of "other proceedings." Originally, § 51.014(b) provided that an interlocutory appeal stayed only "the commencement of a trial in the trial court pending resolution of the appeal."[16] A 2003 amendment expanded the stay to "other proceedings" for a subset of interlocutory appeals.[17] In turn, "other" in "other proceedings" has meaning only by reference to "the one (as of two or more) first mentioned." *Other* (adj., sense 1.a),

---

[16] Act of May 27, 1997, 75th Leg., R.S., ch. 1296 § 1, 1997 Tex. Gen. Laws 4936, 4937.

[17] Act of June 4, 2003, 78th Leg., R.S., ch. 204, § 1.03, 2003 Tex. Gen. Laws 847, 849.

Webster's Third. Thus, "*other* proceedings" is plainly related to "the commencement of a trial."

The trial is the most solemn and official proceeding that takes place in a trial court. So we should expect the "other proceedings in the trial court" also stayed to be substantial—more substantial than a self-executing party filing. *See, e.g.*, *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 751 (Tex. 2006) (Brister, J.) ("'[W]ater damage' like its neighbors 'building collapse' and 'glass breakage' must refer to something more substantial than every tiny water leak or seep."); *see also In re Tex. Educ. Agency*, 441 S.W.3d 747, 750 (Tex. App.—Austin 2014) (orig. proceeding) ("Conducting hearings and signing . . . orders . . . violated the automatic stay of 'all other proceedings in the trial court' under section 51.014(b).").

### *The Corpus Juris*

We can zoom still further out because "the most rudimentary rule of statutory construction" is "that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part." *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality op. of Scalia, J.); *accord Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 & n.81 (Tex. 2019). The broader corpus juris offers even more support.

In addition to the original § 51.014(b), the Legislature also acted against the background of the Rules of Appellate Procedure when it expanded the stay to "other proceedings in the trial court." Texas "'law' includes . . . rules promulgated by the judiciary." *In re City of Georgetown*, 53 S.W.3d 328, 332 (Tex. 2001). And so courts

presume preexisting procedural rules influence the Legislature's choice of words in statutes covering the same subject matter. In a similar context, therefore, the Supreme Court turned to Rule 29.1 for help discerning the meaning of "any other rule" in Texas Government Code § 22.004(i). *See In re TEA II*, 619 S.W.3d at 689.

For the past 40 years, a Rule of Appellate Procedure has covered the same ground as § 51.014(b)—"Further ***Proceedings in the Trial Court***" pending an interlocutory appeal. *See* Tex. R. App. P. 29.5; Tex. R. App. P. 43(d) (1987); Tex. R. Civ. P. 385(d) (1985). And for that rule's entire existence, "further proceedings" has referred to only "further *orders*" by the trial court. *Id.* (emphasis added). And that focus itself tracks the law's long-standing distinction between "ministerial" processes in courts and "the intervention of judicial power." *Bradley v. McCrabb*, Dallam 504, 507, 509 (Tex. 1843); *see Pope v. United States*, 323 U.S. 1, 13 (1944) (explaining that "decisions rendered in [a court's] administrative capacity are not judicial acts").[18] The Legislature's use of the same language in the same context should produce the same result: "proceedings in the trial court" are exercises of judicial power.

Ordinary meaning and a mass of contextual clues allow only one conclusion: The fair meaning of § 51.014(b) doesn't encompass Molina's intervention.

---

[18] *Cf., e.g.*, *United States v. Inocencio*, 328 F.3d 1207, 1209 (9th Cir. 2003) (lack of jurisdiction to reopen case didn't preclude court performing ministerial function revoking convicted defendant's naturalization); *United States v. Maduno*, 40 F.3d 1212, 1218 (11th Cir. 1994) (notice of appeal divesting district court of jurisdiction didn't prevent revocation of naturalization because "revocation is a simple ministerial task and involves no exercise of discretion because the revocation is statutorily mandated").

### b. The Losing Plans cannot overcome § 51.014(b)'s fair meaning.

The Losing Plans don't bother to ground their reasoning in § 51.014(b)'s text. Instead, they try to launder their atextual arguments through regional courts of appeals' decisions that also shun analysis of § 51.014(b)'s text, and through facially inadequate policy arguments.

*Unpersuasive Authority*

The Supreme Court warns that when offered authorities address statutory questions "without any attempt to construe the statutory language," those authorities hold no persuasive force. *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 65 n.13 (Tex. 2015). Yet the Losing Plans rely on five decisions across three regional courts of appeals that—like the Losing Plans—apply § 51.014(b) without ever interpreting the statute. *See* Mot. 11–13.[19] Those decisions likewise hold no persuasive force.

The most recent decision the Losing Plans cite is representative. In *San Jacinto River Authority v. Gonzalez*, the Fourteenth Court said, "A filing by a party in the trial court is a proceeding barred by this stay." 657 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Yet, despite coming years after the Supreme Court's admonition that any "analysis of [§ 51.014(b)'s reach] begins with the statutory text imposing the stay," *In re Geomet*, 578 S.W.3d at 86, the court bypassed the text.

---

[19] The Losing Plans also cite *San Jacinto River Authority v. Lewis*, in which the Fourteenth Court merely presumed that the stay reached the plaintiff's amended petition. *See* 629 S.W.3d 768, 775 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Instead of the statute's fair meaning, *Gonzalez* relied exclusively on the First Court's decision in *City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4 (Tex. App.—Houston [1st Dist.] 2007, no pet.). *See Gonzalez*, 657 S.W.3d at 725 (citing *Swinerton Builders*, 233 S.W.3d at 8–9). But *Swinerton Builders* didn't interpret § 51.014(b) either. It relied on a San Antonio Court decision interpreting *its own court-ordered stay*, **not § 51.014(b)**. *See Swinerton Builders*, 233 S.W.3d at 8–9 (citing *Oryx Cap. Int'l, Inc. v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 439 (Tex. App.—San Antonio 2005, no pet.)).

"The text is the alpha and the omega of the interpretive process." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017). The decisions the Losing Plans cite violate that maxim and thus collectively compose a daisy chain of errors, and here serve only to show what this Court shouldn't do.

### Policy Arguments

Grasping at a one last straw, the Losing Plans warn that adhering to § 51.014(b)'s fair meaning "would permit parties to conduct full-blown discovery and engage in motion practice (short of obtaining rulings on those motions) while the statutory stay is in effect." Mot. 13. But even under the Losing Plans' conception of § 51.014(b), parties may engage in discovery and file motions and responses if they

wish. *See* Mot. 2 (arguing only that filings "do not take effect until after the automatic stay is lifted").[20]

The Losing Plans own "interpretation" creates far worse problems. Take *Swinerton Builders*. There, the defendant City had appealed an order denying its plea to the jurisdiction attacking plaintiff's quantum meruit claims. *See* 233 S.W.3d at 6. While the appeal was pending, the plaintiff amended its petition, dropping the quantum meruit claims, which should have mooted the interlocutory appeal. *See id.* at 8–9. But the court of appeals refused to give effect to the amendment because of the stay, and so wasted resources addressing zombie claims. *See id.* at 9–13. A fair reading of § 51.014(b) avoids that and other senseless results

And if "[a] filing by a party in the trial court is a proceeding barred by" § 51.014(b), *Gonzalez*, 657 S.W.3d at 725, then requests for clerks' and reporters' records, agreed records and statements of the case, bills of costs for preparing records, and even notices of cross-appeals would all violate the stay. *Cf.* Tex. R. App. P. 25.1(a), 26.1(d), 34.2, 34.5, 35.3. Interlocutory appeals would grind to a halt.

The Losing Plans say don't worry because those filings are different than intervention. *See* Mot. 12–13. As expected, the Losing Plans offer no *textual basis* for distinguishing "good" filings from "bad" ones. Their "argument strikes . . . as

---

[20] Or they may not if they wish not to. Exchanging discovery, although indisputably not a proceeding in the trial court, often ceases anyway for a practical reason—any hearing on or order granting a motion to compel, etc. would violate the stay and be voidable. *See In re I-10 Colony, Inc.*, 2014 WL 7914874, at *2 (Tex. App.—Houston [1st Dist.] 2014) (orig. proceeding).

repetitive of Humpty Dumpty's peroration to Alice, '[w]hen I use a word, it means just what I choose it to mean—neither more nor less.'" *Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex. 1984). If "proceedings in the trial court" includes filings, that meaning can't change, chameleon-like, based on the kind of filing. "To give these same words a different meaning for each category [of filing] would be to invent a statute rather than interpret one." *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (Scalia, J.).

The Losing Plans' distinction fails on its own terms too. They say the filings Molina flags are "authorize[d]" by "the Texas Rules of Appellate Procedure." Mot. 12. But appellate rules can't "authorize" anyone "to violate a statute, including section 51.014(b)." *In re Geomet*, 578 S.W.3d at 88.

At any rate, "[w]e cannot presume the Legislature intended" § 51.014(b) "to carry broader . . . force than the enacted language describes." *In re TEA II*, 619 S.W.3d at 683. So this Court is the wrong forum for any policy arguments. Moreover, there's nothing "absurd" about cabining § 51.014(b)'s stay to stays' traditional object—judicial action—and there's nothing "meaningless" about a statute that blocks judicial action. *Contra* Mot. 13. In the end, then, none of the Losing Plans' extratextual arguments can move the needle.

Fidelity to the fair meaning of § 51.014(b)'s text is the only way through. As § 51.014(b)'s stay doesn't reach Molina's intervention, Molina is a party of record and a proper appellant.

### 2. Section 51.014(b)'s stay does not bar proceedings occurring the same day a notice of appeal is filed.

Finally, even if filings were proceedings, Molina's intervention "proceeding" didn't occur after Commissioner Young's notice of appeal "proceeding." Molina's intervention and Commissioner Young's notice of appeal were filed on the same day, after business hours, and 90 minutes apart. At common law, proceedings on the same day are treated as occurring simultaneously. As a result, Molina's intervention didn't happen during the Commissioner's appeal, and so couldn't have violated the stay.

The law "generally reject[s] all fractions of a day, in order to avoid disputes." 2 W. Blackstone, Commentaries * 141; *accord, e.g.*, *Speer v. State*, 2 Tex. Ct. App. 246, 250–51 (1877). "It is a principle of the common law," then, "that in judicial and other public proceedings there are no fractions of a day, and that all transactions of the same day are, in general, regarded as occurring at the same instant of time." *Appeal of Long*, 23 Pa. 297, 299 (1854).[21]

As the Legislature is presumed to legislate with the common law in mind, *see Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017), "matters occurring on the same day are regarded as having occurred simultaneously unless there is some provision by statute or otherwise that fractions of the day, or the time within the day, should be

---

[21] *See also, e.g.*, *Mahoney v. Commonwealth*, 174 S.E. 817, 820 (Va. 1934) ("When two bills are signed by the Governor on the same day (as was the case with these two acts), they are to be regarded as having become 'acts' simultaneously, neither one before the other."); Walter Carrington, *Day*, *in* 8 American and English Encyclopedia of Law 737, 739 & n.1 (David S. Garland, et al., eds., 2d ed. 1898).

noted or taken into account," *Bailey v. Skelly Oil Co.*, 110 P.2d 746, 748 (Kan. 1941); *accord, e.g.*, *Rockhill v. Hanna*, 56 U.S. (15 How.) 189, 195 (1853) ("As the statute provides for no fractions of a day, it follows that all judgments entered on the same day have equal rights, and one cannot claim priority over the other."); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 413 (5th Cir. 2003) ("when the notice to reconsider is issued on the same day that the complaint is filed, the issuance and filing are simultaneous (irrespective of the hours and minutes)"). Section 51.014(b) is silent on fractions of a day, so the common law rule controls.

The one exception to this rule is that a "point of time[] may be proved" if necessary to do "justice." *Galveston, Hous. & San Antonio Ry. v. Lynch*, 55 S.W. 389, 390 (Tex. App.—San Antonio 1899, writ ref'd). No justice would be served by departing from the default rule here.

To the contrary, as shown above, justice requires letting harmless procedural defects pass. *See supra*, Part II.A. Here, there's no question that Molina would be a proper party in the district court had it intervened a second before Commissioner Young filed her notice of appeal. *See* Mot. 10. It's pure happenstance that the Commissioner noticed her appeal *just before* Molina intervened.[22] And Molina's filings were harmless. *See supra*, Part II.B.1.

---

[22] The events were so close in time that Molina's notice of intervention appears *before* Commissioner Young's notice of appeal on the district court's docket.

Molina's intervention didn't violate any stay, so Molina is a party of record in the district court and this Court has jurisdiction adjudicate the appeal of the district court's temporary injunction.

## Conclusion and Prayer

The Court should:

1. Immediately set an accelerated briefing schedule under Rule 38.6.

2. Deny the Losing Plans' motion to dismiss.

Respectfully submitted,

**Scott Douglass & McConnico LLP**

Jason R. LaFond
State Bar No. 24103136
jlafond@scottdoug.com
Cheryl Joseph LaFond
State Bar No. 24104015
clafond@scottdoug.com
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

*Counsel for Appellant Molina Healthcare of Texas, Inc.*

# In the Fifteenth Court of Appeals
# Austin, Texas

S TATE OF T EXAS, et al.,

*Appellants*,

*v.*

B ROADMOOR A USTIN A SSOCIATES, a Texas Joint Venture,

*Appellee*.

On Appeal from the 455th Judicial District of Travis County,
No. D-1-GN-23-007899

## M OLINA'S R ESPONSE A PPENDIX

**Tab**

1   October 15, 2024 Email from HHSC to Molina Healthcare of Texas, Inc.

2   District court docket sheet in No. D-1-GN-24-003839

# TAB 1

**From:** Coffey, Chris
**To:** Letcher, Kelsey
**Subject:** Fw: HHS0013071 STAR Kids Managed Care Services - Notice of Temporary Injunction
**Date:** Tuesday, October 15, 2024 11:24:09 AM
**Attachments:** image001.png
image002.png
TI order.pdf

**From:** Ochoa,Jason (HHSC) <Jason.Ochoa@hhs.texas.gov>
**Sent:** Tuesday, October 15, 2024 11:21 AM
**To:** Rogerss8@aetna.com <Rogerss8@aetna.com>; Dee Cavaness <Dee_Cavaness@bcbstx.com>; Theresa Scepanski <tscepanski@cfhp.com>; Karen Love <karen.love@cookchildrens.org>; Daugherty, Sara J <sara.daugherty@ascension.org>; craig.smith@dchstx.org <craig.smith@dchstx.org>; Coffey, Chris <Chris.Coffey@MolinaHealthCare.Com>; Victoria Mora <Victoria.Mora@phhs.org>; Mark D. Sanders <Mark.Sanders@superiorhealthplan.com>; mxmurph4@texaschildrens.org <mxmurph4@texaschildrens.org>; Langer, Donald S <don_langer@uhc.com>; Thompson, Greg <greg.thompson@wellpoint.com>
**Cc:** HHSC PCS DEC <PCS_DEC@hhsc.state.tx.us>; Ramirez,James (HHSC) <James.Ramirez@hhs.texas.gov>
**Subject:** HHS0013071 STAR Kids Managed Care Services - Notice of Temporary Injunction

**EXTERNAL EMAIL:** Please do not click any links or open any attachments unless you trust the sender and know the content is safe.

## Notice of Temporary Injunction Order

### *Cook Children's Health Plan, et al. v. Cecile Erwin Young, in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission*

Attached is a court order granting requests for a temporary injunction filed by Plaintiffs, Cook Children's Health Plan, Texas Children's Health Plan, Superior HealthPlan, Inc., and Wellpoint Insurance Company, against Defendant, Cecile Erwin Young, in her official capacity as Executive Commissioner of HHSC, in which the judge ordered:

- "Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP; and

- Defendant, and all other persons or entities in active concert or

participation with Defendant, shall refrain from further proceeding with the procurement of, issuing a notice of intent to award or awarding contracts under, or otherwise implementing results from the STAR Kids RFP."

Please forward to any other persons or entities working with you on the HHSC STAR & CHIP solicitation HHS0011152 or the HHSC STAR Kids solicitation HHS0013071.

Thank you,

Jason Ochoa, CTCD, CTCM
Contract Administration Manager, Complex Team
Procurement and Contracting Services
Office: 512-406-2572
jason.ochoa@hhs.texas.gov
1100 W. 49th Street | Mail Code 2020
Austin, TX 78756



# TAB 2

# Case Summary

**Case No. D-1-GN-24-003839**

COOK CHILDREN'S HEALTH PLAN,SUPERIOR     §          Location: **353rd District Court**
HEALTHPLAN, INC.,TEXAS CHILDREN'S HEALTH    §     Judicial Officer: **353RD, DISTRICT COURT**
PLAN,WELLPOINT INSURANCE COMPANY VS. CECILE   §        Filed on: **06/20/2024**
ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS
EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH
AND HUMAN SERVICES COMMISSION,MOLINA
HEALTHCARE OF TEXAS, INC.

---

## Case Information

**Bonds**

| | | | | |
|---|---|---|---|---|
| | | | Case Type: | Other Civil |
| **TEMP** | #00027409 | $1,000.00 | Case Status: | **06/20/2024** **Open** |
| **INJUNCTION** | | | | |
| **BOND (CASH)** | | | | |
| 10/04/2024 | | BOND POSTED | | |
| Counts: 1 | | | | |

---

## Assignment Information

**Current Case Assignment**
Case Number    D-1-GN-24-003839
Court           353rd District Court
Date Assigned   06/20/2024
Judicial Officer   353RD, DISTRICT COURT

---

## Party Information

| | | |
|---|---|---|
| **Plaintiff** | **COOK CHILDREN'S HEALTH PLAN** | **BURGESS, KAREN CROOK** *Retained* |
| | | **Harris, Susan Feigin** *Retained* **GORDON, MATTHEW P** *Retained* |
| | **SUPERIOR HEALTHPLAN, INC.** | **Harris, Susan Feigin** *Retained* |
| | | **YOUNG, THERESA MARIE** *Retained* **RODDENBERRY, TIFFANY A.** *Retained* |
| | **TEXAS CHILDREN'S HEALTH PLAN** | **Harris, Susan Feigin** *Retained* |
| | | **TRAHAN, PAUL** *Retained* |
| | **WELLPOINT INSURANCE COMPANY** | **Harris, Susan Feigin** *Retained* |
| | | **GROSSMAN, BENJAMIN J.** |

| | | |
|---|---|---|
| | | *Retained* |
| | | **JOHNSON, ROBERT FRANCIS III** |
| | | *Retained* |
| | | **KU, MICHELLE YOUN** |
| | | *Retained* |

**Defendant** **CECILE ERWIN YOUNG EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION**
CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION

**Criscione, Stephanie A.**
*Retained*

**COOK, JENNIFER N.**
*Retained*
**BEVILACQUA, THOMAS MATTHEW**
*Retained*

**MOLINA HEALTHCARE OF TEXAS, INC.**

**LAFOND, CHERYL JOSEPH**
*Retained*

---

## Case Events

06/20/2024
ORIGINAL PETITION/APPLICATION
*3874 ORIGINAL PETITION*
Party: Plaintiff TEXAS CHILDREN'S HEALTH PLAN
Party 2: Attorney TRAHAN, PAUL

06/20/2024

ORIGINAL PETITION/APPLICATION (OCA)
*PLAINTIFF S ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR INJUNCTIVE RELIEF*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN
Atty/Pro Se: Attorney BURGESS, KAREN CROOK

06/20/2024

OTHER/NOTICE
*LETTER- FLASH DRIVE OF EXHIBITS G-Q PERTAINING TO PLAINTIFFS TEXAS CHILDREN'S HEALTH PLANS VERIFIED ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF*
Party: Plaintiff TEXAS CHILDREN'S HEALTH PLAN

06/21/2024

MOTION
*PLAINTIFF S SUPPLEMENTAL APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN

06/21/2024
MOTION
*PLAINTIFF COOK CHILDREN S HEALTH PLAN S MOTION FOR TEMPORARY SEALING ORDER*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN

06/21/2024

OTHER/NOTICE
*DECLARATION OF KAREN LOVE IN SUPPORT OF PLAINTIFF S SUPPLEMENTAL APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION*

06/24/2024

OTHER/NOTICE
*NOTICE OF HEARING ON PLAINTIFF COOK CHILDREN S HEALTH PLAN S APPLICATION FOR TEMPORARY RESTRAINING ORDER*

06/25/2024

OTHER/NOTICE

*AMENDED NOTICE OF HEARING ON PLAINTIFF COOK CHILDREN S HEALTH PLAN S APPLICATION FOR TEMPORARY RESTRAINING ORDER*

06/26/2024

PLEADING

*PLAINTIFF S SUPPLEMENT TO ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR INJUNCTIVE RELIEF*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN
  Party 2:  Attorney BURGESS, KAREN CROOK

06/27/2024

EXECUTED SERVICE

*EXECUTED RETURN SERVICE OF CITATION -CECILE ERWIN YOUNG EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN

06/28/2024

PLEADING

*PLAINTIFF'S AMENDED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN
  Party 2:  Attorney BURGESS, KAREN CROOK

06/28/2024    MOTION

*PLAINTIFF COOK CHILDREN S HEALTH PLAN S MOTION FOR TEMPORARY SEALING ORDER*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN

06/28/2024    OTHER/NOTICE

*NOTICE OF HEARING*
  Party:  Plaintiff TEXAS CHILDREN'S HEALTH PLAN
  Party 2:  Attorney Harris, Susan Feigin

07/01/2024    ORIGINAL PETITION/APPLICATION

*4059 ORIGINAL PETITION*
  Party:  Plaintiff SUPERIOR HEALTHPLAN, INC.
  Party 2:  Attorney YOUNG, THERESA MARIE

07/01/2024    OTHER/NOTICE

*PROCESS REQUEST FORM - CITATION FOR TEXAS HEALTH AND HUMAN SERVICES COMMISSION*

07/02/2024    MOTION

*MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW P. GORDON*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN

07/02/2024    MOTION

*MOTION FOR ADMISSION PRO HAC VICE OF KAREN D. WALKER*
  Party:  Plaintiff SUPERIOR HEALTHPLAN, INC.

07/03/2024

OTHER/NOTICE

*SECOND AMENDED NOTICE OF HEARING ON PLAINTIFF COOK CHILDREN S HEALTH PLAN S APPLICATION FOR TEMPORARY RESTRAINING ORDER*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN

07/03/2024    OTHER/NOTICE

*NOTICE OF FILING RULE 11 AGREEMENT*
  Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN

07/08/2024
EXECUTED SERVICE
*EXECUTED RETURN SERVICE OF CITATION - TEXAS HEALTH AND HUMAN SERVICES COMMISSION*
Party: Plaintiff SUPERIOR HEALTHPLAN, INC.

07/12/2024

ORIGINAL ANSWER/WAIVER
*DEFENDANT S ORIGINAL ANSWER*
Party:
Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH
AND HUMAN SERVICES COMMISSION
Party 2: Attorney COOK, JENNIFER N.

07/15/2024

OTHER/NOTICE
*AMENDED NOTICE OF HEARING ON PLAINTIFF TEXAS CHILDREN S HEALTH PLAN S APPLICATION FOR TEMPORARY
RESTRAINING ORDER*
Party: Plaintiff TEXAS CHILDREN'S HEALTH PLAN

07/17/2024
ORDER    (Judicial Officer: WISSER, JON N)
*AGREED ORDER GRANTING MOTION FOR ADMISSION PRO HAC VICE OF KAREN D. WALKER*

07/17/2024
OTHER/NOTICE
*NOTICE OF FILING VERIFICATION*

07/17/2024
OTHER/NOTICE
*LETTER REQUESTING CITATION*

07/18/2024
ORIGINAL PETITION/APPLICATION
*4327 ORIGINAL PETITION*
Party: Plaintiff WELLPOINT INSURANCE COMPANY
Party 2: Attorney JOHNSON, ROBERT FRANCIS III

07/18/2024
OTHER/NOTICE
*NOTICE OF IN-PERSON COURT PROCEEDING ON THE CENTRAL DOCKET*

07/18/2024

PLEADING
*PLAINTIFF S SUPPLEMENT TO VERIFIED ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR
INJUNCTIVE RELIEF*
Party: Plaintiff TEXAS CHILDREN'S HEALTH PLAN
Party 2: Attorney TRAHAN, PAUL

07/19/2024
OTHER/NOTICE
*NOTICE OF HEARING*

07/19/2024

MOTION
*DEFENDANT CECILE ERWIN YOUNG S MOTION TO CONSOLIDATE*
Party:
Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH
AND HUMAN SERVICES COMMISSION

07/19/2024
MOTION
*PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN

07/19/2024
OTHER/NOTICE
*NOTICE OF HEARING*

07/19/2024
ORIGINAL ANSWER/WAIVER
*DEFENDANT S ORIGINAL ANSWER*

07/19/2024
MOTION
*PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY*
Party: Plaintiff SUPERIOR HEALTHPLAN, INC.

07/19/2024
MOTION
*DEFENDANT CECILE ERWIN YOUNG S MOTION TO CONSOLIDATE*

07/19/2024
OTHER/NOTICE
*NOTICE OF HEARING*

07/19/2024
ORIGINAL ANSWER/WAIVER
*DEFENDANT S ORIGINAL ANSWER*

07/19/2024
MOTION
*PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*
Party: Plaintiff TEXAS CHILDREN'S HEALTH PLAN

07/19/2024
MOTION
*DEFENDANT CECILE ERWIN YOUNG S MOTION TO CONSOLIDATE*

07/19/2024
OTHER/NOTICE
*NOTICE OF HEARING*

07/19/2024
ORIGINAL ANSWER/WAIVER
*DEFENDANT S ORIGINAL ANSWER*

07/19/2024
MOTION
*DEFENDANT CECILE ERWIN YOUNG S MOTION TO CONSOLIDATE*

07/22/2024
MOTION
*UNOPPOSED MOTION FOR PRO HAC VICE ADMISSION OF BENJAMIN J. GROSSMAN*
Party: Plaintiff WELLPOINT INSURANCE COMPANY

07/24/2024
OTHER/NOTICE
*NOTICE OF IN-PERSON COURT PROCEEDING ON THE CENTRAL DOCKET*

07/24/2024
MOTION
*PLAINTIFFS MOTION FOR TEMPORARY RESTRAINING ORDER*
Party: Plaintiff SUPERIOR HEALTHPLAN, INC.

07/24/2024
EXECUTED SERVICE
*EXECUTED CITATION CECILE ERWIN YOUNG*

07/24/2024
MOTION
*PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*
Party: Plaintiff WELLPOINT INSURANCE COMPANY

07/24/2024
PLEADING
*PLAINTIFF'S SUPPLEMENT TO VERIFIED ORIGINAL PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF*
Party: Plaintiff WELLPOINT INSURANCE COMPANY
Party 2: Attorney KU, MICHELLE YOUN

07/25/2024

EXECUTED SERVICE

*EXECUTED RETURN SERVICE OF CITATION - CECILE ERWIN YOUNG EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION*

Party: Plaintiff WELLPOINT INSURANCE COMPANY

07/25/2024

ORDER    (Judicial Officer: MEACHUM, AMY CLARK)

*ORDER GRANTING ADMISSION PRO HAC VICE FOR ATTORNEY BENJAMIN J. GROSSMAN*

07/26/2024

RESPONSE

*DEFENDANT CECILE ERWIN YOUNG S RESPONSE TO PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*

Party:

Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION

07/26/2024

OTHER/NOTICE

*NOTICE OF FILING RULE 11 AGREEMENT*

07/26/2024

RESPONSE

*DEFENDANT CECILE ERWIN YOUNG S RESPONSE TO PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*

07/26/2024

OTHER/NOTICE

*EMAIL CORRESONDENCE REGARDING RULE 11 AGREEMENT*

07/26/2024

OTHER/NOTICE

*NOTICE OF WITHDRAWAL OF HEARING NOTICE*

07/26/2024

OTHER/NOTICE

*AMENDED NOTICE OF IN-PERSON COURT PROCEEDING ON THE CENTRAL DOCKET*

07/26/2024

RESPONSE

*DEFENDANT CECILE ERWIN YOUNG S RESPONSE TO PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*

07/26/2024

RESPONSE

*DEFENDANT CECILE ERWIN YOUNG S RESPONSE TO PLAINTIFF S MOTION FOR EXPEDITED DISCOVERY*

07/26/2024

OTHER/NOTICE

*NOTICE OF FILING RULE 11 AGREEMENT*

07/26/2024

OTHER/NOTICE

*NOTICE OF APPEARANCE OF CO-COUNSEL*

Party:

Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION

07/29/2024

ORDER    (Judicial Officer: EISERLOH, LAURIE)

*ORDER GRANTING CONSOLIDATION*

07/29/2024

OTHER/NOTICE

*PLAINITFF'S JURY DEMAND*

07/29/2024

RESPONSE

*PLAINTIFF S RESPONSE TO MOTION TO CONSOLIDATE*

Party: Plaintiff COOK CHILDREN'S HEALTH PLAN

07/29/2024

OTHER/NOTICE

*SUPPLEMENT TO PLAINTIFF S RESPONSE TO MOTION TO CONSOLIDATE*

07/29/2024   MOTION
    *PLAINTIFF S AMENDED CERTIFICATE OF CONFERENCE TO MOTION FOR EXPEDITED DISCOVERY*
    Party:   Plaintiff WELLPOINT INSURANCE COMPANY

08/02/2024   ORDER     (Judicial Officer: EISERLOH, LAURIE)
    *ORDER GRANTING IN PART PLAINTIFFS MOTIONS FOR EXPEDITED DISCOVERY*

08/02/2024   MOTION
    *MOTION FOR ADMISSION PRO HAC VICE OF TIFFANY A. RODDENBERRY*
    Party:   Plaintiff SUPERIOR HEALTHPLAN, INC.

08/06/2024   OTHER/NOTICE
    *NOTICE OF HEARING ON PLAINTIFFS APPLICATIONS FOR TEMPORARY INJUNCTION*

08/06/2024   OTHER/NOTICE
    *NOTICE OF STATUS CONFERENCE ON DISCOVERY MOTIONS*

08/07/2024   ORDER     (Judicial Officer: BURGESS, DON)
    *AGREED ORDER GRANTING MOTION FOR ADMISSION PRO HAC VICE OF TIFFANY A. RODDENBERRY*

08/08/2024   ASSIGNMENT BY PRESIDING JUDGE
    *JUDGE ACM'S ASSIGNMENT LETTER TO JUDGE EISERLOH*

08/08/2024

MOTION
    *AGREED JOINT MOTION FOR THE ENTRY OF A CONFIDENTIALITY AND PROTECTIVE ORDER*
    Party:
    Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION;
    Plaintiff COOK CHILDREN'S HEALTH PLAN;
    Plaintiff SUPERIOR HEALTHPLAN, INC.;
    Plaintiff TEXAS CHILDREN'S HEALTH PLAN;
    Plaintiff WELLPOINT INSURANCE COMPANY

08/09/2024   OTHER/NOTICE
    *NOTICE OF FILING OF RULE 11 AGREEMENT*

08/12/2024   COURT CORRESPONDENCE
    *LETTER TO COUNSEL FROM JUDGE EISERLOH*

08/16/2024   ORDER     (Judicial Officer: EISERLOH, LAURIE)
    *AGREED ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW P. GORDON*

08/16/2024   OTHER/NOTICE
    *AMENDED NOTICE OF STATUS CONFERENCES ON DISCOVERY MOTIONS*
    Party:   Plaintiff COOK CHILDREN'S HEALTH PLAN

08/21/2024   ORDER     (Judicial Officer: EISERLOH, LAURIE)
    *CONFIDENTIALITY AND PROTECTIVE ORDER*

08/27/2024   OTHER/NOTICE
    *AMENDED NOTICE OF HEARING ON PLAINTIFFS APPLICATIONS FOR TEMPORARY INJUNCTION*

08/29/2024   OTHER/NOTICE
    *NOTICE OF FILING AGREED ORDER*
    Party:   Plaintiff SUPERIOR HEALTHPLAN, INC.

08/30/2024
ORDER (Judicial Officer: EISERLOH, LAURIE)
*AGREED ORDER*

09/11/2024
OTHER/NOTICE
*AMENDED NOTICE OF STATUS CONFERENCE ON DISCOVERY MOTIONS*

09/13/2024

MOTION
*DEFENDANT YOUNG S MOTION FOR PROTECTIVE ORDER FROM SUBPOENA*
Party:
Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION

09/16/2024
OTHER/NOTICE
*NOTICE OF HEARING*

09/16/2024

ORIGINAL ANSWER/WAIVER
*DEFENDANT S PLEA TO THE JURISDICTION AND RESPONSE TO PLAINTIFFS REQUESTS FOR A TEMPORARY INJUNCTION*
Party:
Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION
Party 2: Attorney BEVILACQUA, THOMAS MATTHEW

09/20/2024
OTHER/NOTICE
*AMENDED NOTICE OF HEARING ON PLAINTIFFS APPLICATIONS FOR TEMPORARY INJUNCTION*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN;
Plaintiff SUPERIOR HEALTHPLAN, INC.;
Plaintiff TEXAS CHILDREN'S HEALTH PLAN;
Plaintiff WELLPOINT INSURANCE COMPANY

09/20/2024
OTHER/NOTICE
*PLAINTIFFS PREHEARING BRIEF*

09/20/2024

PLEADING
*PLAINTIFF COOK CHILDREN S HEALTH PLAN S VERIFIED AMENDED PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR INJUNCTIVE RELIEF*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN;
Plaintiff SUPERIOR HEALTHPLAN, INC.;
Plaintiff TEXAS CHILDREN'S HEALTH PLAN;
Plaintiff WELLPOINT INSURANCE COMPANY
Party 2: Attorney GORDON, MATTHEW P;
Attorney JOHNSON, ROBERT FRANCIS III;
Attorney TRAHAN, PAUL;
Attorney YOUNG, THERESA MARIE

09/20/2024

PLEADING
*PLAINTIFF COOK CHILDREN S HEALTH PLAN S SECOND AMENDED APPLICATION FOR TEMPORARY INJUNCTION*
Party: Plaintiff COOK CHILDREN'S HEALTH PLAN;
Plaintiff SUPERIOR HEALTHPLAN, INC.;
Plaintiff TEXAS CHILDREN'S HEALTH PLAN;
Plaintiff WELLPOINT INSURANCE COMPANY
Party 2: Attorney GORDON, MATTHEW P;
Attorney JOHNSON, ROBERT FRANCIS III;
Attorney TRAHAN, PAUL;
Attorney YOUNG, THERESA MARIE

09/23/2024
ORDER      (Judicial Officer: EISERLOH, LAURIE)
*ORDER (HEARING STRUCTURE)*

09/23/2024
RESPONSE
*PLAINTIFFS RESPONSE TO DEFENDANT S MOTION FOR PROTECTIVE ORDER*
Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN;
         Plaintiff SUPERIOR HEALTHPLAN, INC.;
         Plaintiff TEXAS CHILDREN'S HEALTH PLAN;
         Plaintiff WELLPOINT INSURANCE COMPANY

09/23/2024

PLEADING
*PLAINTIFF SUPERIOR HEALTHPLAN, INC. S AMENDED PETITION FOR DECLARATORY JUDGMENT AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF*
Party:  Plaintiff SUPERIOR HEALTHPLAN, INC.
Party 2:  Attorney YOUNG, THERESA MARIE

09/25/2024
ORDER      (Judicial Officer: EISERLOH, LAURIE)
*ORDER (MOTION FOR PROTECTIVE ORDER)*

09/27/2024
RESPONSE
*PLAINTIFF SUPERIOR HEALTHPLAN, INC. S RESPONSE TO DEFENDANT S PLEA TO THE JURISDICTION*
Party:  Plaintiff SUPERIOR HEALTHPLAN, INC.

09/27/2024

RESPONSE
*PLAINTIFFS COOK CHILDREN S HEALTH PLAN AND TEXAS CHILDREN S HEALTH PLAN S OPPOSITION TO DEFENDANT S PLEA TO THE JURISDICTION*
Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN;
         Plaintiff TEXAS CHILDREN'S HEALTH PLAN

09/27/2024
RESPONSE
*PLAINTIFF WELLPOINT INSURANCE COMPANY S RESPONSE TO DEFENDANT S PLEA TO THE JURISDICTION*
Party:  Plaintiff WELLPOINT INSURANCE COMPANY

09/27/2024
OTHER/NOTICE
*DEFENDANT S PREHEARING BRIEF*

09/27/2024
OTHER/NOTICE
*PLAINTIFFS BRIEF REGARDING LEGISLATIVE PRIVILEGE*

09/27/2024

PLEADING
*PLAINTIFF S VERIFIED AMENDED PETITION FOR DECLARATORY AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF*
Party:  Plaintiff WELLPOINT INSURANCE COMPANY
Party 2:  Attorney Harris, Susan Feigin

09/30/2024

PLEADING
*PLAINTIFF'S VERIFIED AMENDED PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF*
Party:  Plaintiff COOK CHILDREN'S HEALTH PLAN;
         Plaintiff SUPERIOR HEALTHPLAN, INC.;
         Plaintiff TEXAS CHILDREN'S HEALTH PLAN;
         Plaintiff WELLPOINT INSURANCE COMPANY
Party 2:  Attorney Harris, Susan Feigin

10/04/2024
ORD: TEMP RESTRAINING ORD\TEMP INJUNCTION (OCA)      (Judicial Officer: EISERLOH, LAURIE)
*TEMPORARY INJUNCTION AND ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION*

10/04/2024
OTHER/NOTICE
*PLAINTIFFS SUMMARY OF ULTRA VIRES EVIDENCE*

10/04/2024
OTHER/NOTICE
*DEFENDANT HHSC S BENCH BRIEF REGARDING ADMISSION OF EXHIBITS*

10/04/2024
BOND DOCUMENT

10/08/2024
OTHER/NOTICE
*RULE 203 REPORTER'S CERTIFICATIONV EMILY S. ZALKOVSKY*

10/08/2024
OTHER/NOTICE
*RULE 203 REPORTER'S CERTIFICATION JIMMY M. BLANTON*

10/11/2024

OTHER/NOTICE
*RULE 203-REPORTER'S CERTIFICATION TO THE DAILY COPY TRANSCRIPT PURSUANT TO PROECTIVE ORDER VIDEOTAPED/REALTIMED DEPOSITION OF JAMES A RAMIREZ*

10/11/2024

OTHER/NOTICE
*RULE 203-REPORTER'S CERTIFICATION TO THE DAILY COPY TRANSCRIPT PURSUANT TO PROTECTIVE ORDER VIDEOTAPED/REALTIMED DEPOSITION OF KATHERINE M MOLINA*

10/11/2024

OTHER/NOTICE
*RULE 203-REPORTER'S CERTIFICATION TO THE DAILY COPY TRANSCRIPT PURSUANT TO PROTECTIVE ORDER VIDEOTAPED/REALTIMED DEPOSITION OF JAMES A RAMIREZ*

10/14/2024

OTHER/NOTICE
*RULE 203-REPORTER'S CERTIFICATION TO THE DAILY COPY TRANSCRIPT PURSUANT TO PROTECTIVE ORDER VIDEOTAPED / REALTIMED DEPOSITION OF KATHERINE M. MOLINAENTATIVE CAPACITY)*

10/21/2024
PLEADING
*MOLINA HEALTHCARE OF TEXAS, INC. S ORIGINAL PETITION IN INTERVENTION AND ANSWER*
Party: Defendant MOLINA HEALTHCARE OF TEXAS, INC.
Party 2: Attorney LAFOND, CHERYL JOSEPH

10/21/2024

NOTICE OF APPEAL
*DEFENDANT S NOTICE OF ACCELERATED INTERLOCUTORY APPEAL*
Party:
Defendant CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION

10/21/2024
NOTICE OF APPEAL
*MOLINA HEALTHCARE OF TEXAS S NOTICE OF APPEAL*
Party: Defendant MOLINA HEALTHCARE OF TEXAS, INC.

10/22/2024
NOTICE OF APPEAL
*AETNA BETTER HEALTH OF TEXAS, INC. S NOTICE OF APPEAL*

10/22/2024
PLEADING
*AETNA BETTER HEALTH OF TEXAS, INC. S PLEA IN INTERVENTION*
Party 2: Attorney Knight, Joseph R

10/23/2024   OTHER/NOTICE

*LETTER FROM 15TH COA*

10/23/2024    OTHER/NOTICE
            *REQUEST FOR REPORTER'S RECORD*

10/23/2024    OTHER/NOTICE
            *REQUEST FOR CLERK'S RECORD*

10/24/2024    OTHER/NOTICE
            *LETTER FROM 15TH COA*

10/24/2024    BILL OF COST CRT COST/FINE
            *BILL OF COST FOR CLERKS RECORD*

11/01/2024    OTHER/NOTICE
            *CLERK'S RECORD HAND DELIVERED TO 15TH COA*

11/05/2024    OTHER/NOTICE
            *LETTER FROM 15TH COA*

11/12/2024    ORDER
            *ORDER TO ABATE 15TH COA*

11/12/2024    OTHER/NOTICE
            *LETTER-15TH COA*

12/23/2024    EXHIBITS RECEIPT
            *5411DC*

07/03/2025    ORDER
            *ORDER TO REINSTATE FROM 15TH COA*

07/03/2025    OTHER/NOTICE
            *NOTICE OF ORDER DISTRIBUTION*

---

## Hearings

08/12/2024    *CANCELED* **Setting Date**    (9:00 AM)
            *Passed by Agreement*

08/26/2024    *CANCELED* **Setting Date**    (9:01 AM)
            *Passed by Agreement*

---

## Service Events

06/21/2024
**Citation**
CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION
Served: 06/24/2024

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 103550613
Filing Code Description: Response
Filing Description: Response
Status as of 7/24/2025 2:42 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 7/24/2025 2:06:27 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 7/24/2025 2:06:27 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 7/24/2025 2:06:27 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 7/24/2025 2:06:27 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 7/24/2025 2:06:27 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 7/24/2025 2:06:27 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 7/24/2025 2:06:27 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 7/24/2025 2:06:27 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 7/24/2025 2:06:27 PM | SENT |
| David Johns | | david@cobbjohns.com | 7/24/2025 2:06:27 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 7/24/2025 2:06:27 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 7/24/2025 2:06:27 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 7/24/2025 2:06:27 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 7/24/2025 2:06:27 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 7/24/2025 2:06:27 PM | ERROR |
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 7/24/2025 2:06:27 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 103550613
Filing Code Description: Response
Filing Description: Response
Status as of 7/24/2025 2:42 PM CST

Associated Case Party: Cook Children's Health Plan

| | | | | |
|---|---|---|---|---|
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 7/24/2025 2:06:27 PM | SENT |
| Trisha Marino | | tmarino@perkinscoie.com | 7/24/2025 2:06:27 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 7/24/2025 2:06:27 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 7/24/2025 2:06:27 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 7/24/2025 2:06:27 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 7/24/2025 2:06:27 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 7/24/2025 2:06:27 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 7/24/2025 2:06:27 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Superior Healthplan Inc.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 103550613
Filing Code Description: Response
Filing Description: Response
Status as of 7/24/2025 2:42 PM CST

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 7/24/2025 2:06:27 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 7/24/2025 2:06:27 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 7/24/2025 2:06:27 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 7/24/2025 2:06:27 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 7/24/2025 2:06:27 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jason R.LaFond | | jlafond@scottdoug.com | 7/24/2025 2:06:27 PM | SENT |
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 7/24/2025 2:06:27 PM | SENT |